UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| KEITON SMITH,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>NDOC, *et al.*,<br><br>　　　　Defendants. | Case No.  2:22-cv-00872-CDS-EJY<br><br>**ORDER** |

## I.　Background

Pending before the Court is Plaintiff's Motion for Sanctions and Adverse Inference Under Rule 37(e) (sometimes the "original Motion"). ECF No. 161. Also pending are Plaintiff's Supplemental Motion for Sanctions (the "Supplement") and Defendants' Motion to Strike Plaintiff's Supplement. ECF Nos. 171, 174. The Court reviewed Plaintiff's Motions and, to the extent decipherable, exhibits attached to these filings.[1] The Court also reviewed Defendants' Motion, and all responses and replies.

Many of the exhibits attached to Plaintiff's original Motion date from 2024, not from the January 20, 2025 search (the "January search") involving Senior Correctional Officer Robert Suwe ("Suwe") about which Plaintiff complains.[2] ECF No. 161 at 2, 3, 5. While Plaintiff references these historic events, it is clear he seeks sanctions based on Defendants' alleged failure to preserve a video recording of the January search that Plaintiff describes as "critical" to the disappearance of unidentified legal documents and issues unrelated to the case at bar. *Id*. at 2.[3] Plaintiff's

---

[1]　Pages 12, 23, 24, 34, 35, 37, and 39 attached to Plaintiff's original Motion are so faint as to be indecipherable. ECF No. 161 at 12, 23, 24, 34, 35, 37, 39.

[2]　The search conducted on January 20, 2025 was of Housing Unit 2. ECF No. 159-2 at 2. All offenders housed in that unit were removed from the area. *Id*. Suwe, who was searching Plaintiff's area, contacted the investigator coordinating the overall search reporting that it appeared there was a "foreign object" inside Plaintiff's TV. *Id*. Upon searching Plaintiff's TV, a working cell phone was found inside. *Id*.

[3]　Other than "legal documents" that allegedly went missing, Plaintiff alleges legal mail and supplies were mishandled or destroyed, there is a systemic failure to report his "grievances and warnings," Suwe fabricated charges against Plaintiff, and there is an "ongoing pattern of retaliation for Plaintiff's legal activity." *Id*. at 2. The only claims before the Court pertain to Plaintiff's medical care and response to medical grievances. *See* ECF No. 7. The Court

1

Supplement confirms he completed a grievance form on February 11, 2025 regarding missing "exhibits and vital material evidence" allegedly in his possession before the January search. ECF No. 171 at 8.[4]

In his original Motion and Supplement, Plaintiff claims Suwe (1) was less than truthful in his Declaration submitted to the Court in March 2025, (2) falsified a Nevada Department of Corrections ("NDOC") document to hide video footage of the January search, and (3) failed to preserve or disclose the video of the search causing prejudice to Plaintiff. ECF No. 161 at 6. Specifically, Plaintiff contends his Exhibit B shows that Suwe first indicated there was no video of the January search, while Suwe later stated there was a video, but it was corrupted. *Compare id*. at 15 and 31 (Suwe's Declaration) ¶ 11. Plaintiff says what makes all this worse is that he filed a grievance against Suwe arising from Suwe opening Plaintiff's legal mail, which grievance has never been addressed to Plaintiff's satisfaction. *Id*. at 5.

There is no dispute that Plaintiff filed a grievance on February 20, 2025 regarding the documents he says were lost during the January search (ECF No. 171 at 8); however, there is also no dispute that the grievance was returned to Plaintiff with permission to resubmit the request. *Id*. at 12. Nonetheless, Plaintiff says his February 11th grievance, and the prison's response, demonstrate Defendants had an "opportunity to preserve relevant evidence." *Id*. at 3. Plaintiff seeks imposition of sanctions under Federal Rule of Civil Procedure 37(e). ECF No. 161 at 8.

Defendants respond to Plaintiff's Motion pointing to the Court's previous Order addressing Plaintiff's concerns regarding the unproduced January 2025 cell search video. ECF No. 163 at 2. That is, on March 3, 2025, the Court entered an Order requiring Defendants to submit a status report (1) addressing whether there was video, audio, or paper evidencing the January search, (2) requiring Defendants to return any documents related to this lawsuit to Plaintiff, (3) providing an explanation if documents taken no longer existed, and (4) providing a declaration if there was nothing taken from Plaintiff during the search. ECF No. 155. Defendants complied with this

---

cannot grant relief that is unrelated to the claims actually pleaded. *Dryden v. State of Nevada*, Case No. 2:16-cv-1227-JAD-GWF, 2019 WL 13204178, at *1 (D. Nev. July 1, 2019).

[4] The Court reasonably interprets the page that appear blank submitted with Plaintiff's original Motion (ECF No. 161 at 12), duplicated in the Reply (ECF No. 164 at 14), as representing the grievance provided by Plaintiff at ECF No. 171 at 8.

Order by filing a status report detailing what prompted the January search, providing an inventory of what was taken from Plaintiff, and confirming the property returned to Plaintiff the day after the search. ECF Nos. 159, 159-2; 159-5 at 2-3. Defendants also provided pictures of the search and documents evidencing a proceeding at which Plaintiff was found guilty of possessing contraband. ECF Nos. 159-2 at 4-14, 159-3 at 2-7. Defendants' exhibits further included copies of appeals submitted by Plaintiff two days after the search—that is, on January 22, 2025—seeking return of items taken during the search Plaintiff contended had not been returned, none of which listed legal papers or materials. ECF No. 159-5 at 5-7. And, Defendants produced a grievance Plaintiff filed on February 7, 2025 regarding shoes taken that were promptly returned. *Id.* at 10. Plaintiff's February 7th grievance did not mention alleged missing legal paper or materials. *Id*.

In addition to the evidentiary information provided, Defendants explain they resent copies of discovery documents previously produced to Plaintiff. ECF No. 159-11 ¶ 6. Defendants further submit that while Suwe, acting in the capacity of an institutional investigator for Northern Nevada Correctional Center, had taken a video of the search, the video file was corrupted and could not be produced. ECF No. 159-10 ¶¶ 11, 17. Assistance to recover the video was sought; however, to date, there does not appear to be recovery of the video. *Id*. ¶ 17; ECF No. 163-1.

Plaintiff claims Suwe's Declaration, at paragraphs 11 and 17, demonstrate an inconsistency regarding whether a video exists when those paragraphs are compared to the Individual Cell Search Log produced by Defendants. *Compare* ECF Nos. 159-10 *and* 159-5 at 8. Although Defendants do not explain why the "no" box was checked next to the words "Video Camera" on the Individual Cell Search Log, there is ultimately no dispute that a video was taken of the January search, that video was corrupted, and the video was not produced. *Id*. ¶¶ 11, 17. For the reasons stated below, the Court finds the inconsistency that exists between the Search Log and Declaration provided by Suwe does not support a finding of spoliation.

Finally, Defendants seek to strike Plaintiff's Supplement as "improper" and providing information irrelevant to the issue before the Court. ECF No. 174. While not changing the Court's decision, the Supplement is helpful as it attaches exhibits showing the outcome of Plaintiff's February 2025 grievance regarding his alleged lost paperwork. ECF No. 171 at 12. The

3

documents demonstrate Plaintiff had an opportunity to resubmit his February grievance; albeit the instructions for doing so are far from a model of clarity. *Id*. Given that Plaintiff, a *pro se* prisoner, filed his Supplement as a separate motion, and Defendants had a full opportunity to respond, the Court exercises its broad discretion regarding whether to strike Plaintiff's Supplement and denies Defendants' Motion. As stated, the Supplement provides the Court with information attendant to Plaintiff's original Motion, and Defendants identify no prejudice arising from consideration of this information.

## II. Discussion

The duty to preserve evidence arises when a party "reasonably should have known that the evidence is relevant to anticipated litigation." *United States v. Semenza*, Case No. 2:22-cv-02059-APG-DJA, 2024 WL 5294520, at *2 (D. Nev. Dec. 19, 2024). "As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which he or she knows or reasonably should know is relevant to the action or may be relevant to future litigation." *Colonies Partners L.P. v. Cnty. of San Bernardino*, Case No. 5:18-cv-00420-JGB (SHK), 2020 WL 1496444, at *6 (C.D. Cal. Feb. 27, 2020) (internal citations and quote marks omitted). An entity and its employee defendants can both be under a duty to preserve and, therefore, culpable for spoliation of ESI even if only one or the other is directly responsible for the destruction of evidence. *See First Fin. Sec., Inc. v. Freedom Equity Group, LLC*, Case No. 15-cv-1893-HRL, 2016 WL 5870218, at *3 (N.D. Cal. Oct. 7, 2015). As the party seeking sanctions, it is Plaintiff's burden to demonstrate that the video was relevant and in fact destroyed or not preserved. Fed. R. Civ. P. 37(e). The showing that ESI actually was lost, or likely lost, must be made through "competent evidence, which could take the form of expert testimony or other evidence." *Colonies*, 2020 WL 1496444, at *12.

Before imposing sanctions under Rule 37(e), a court should evaluate the following criteria: (1) whether the information qualifies as ESI; (2) whether there was a duty to preserve the ESI in the anticipation or conduct of litigation; (3) whether the ESI was lost because a party failed to take reasonable steps to preserve it; and (4) whether the ESI can be restored or replaced through additional discovery. *Lopez v. Cardenas Markets*, LLC., Case No. 2:21-cv-01915-JCM-BNW, 2023 WL 3182658, at *2 (D. Nev. May 1, 2023). "If these requirements are satisfied, the rule

4

authorizes two levels of sanctions. Section (e)(1) permits a court, upon finding prejudice to another party from the loss of ESI, to order measures no greater than necessary to cure the prejudice." *Collins v. Autozone, Inc.*, Case No. 2:22-cv-00316-CDS-BNW, 2024 WL 1054684, at *3 (D. Nev. Mar. 11, 2024). "Section (e)(2) permits a court to impose more severe sanctions such as adverse inference jury instructions or dismissal, but only if it finds that the spoliating party 'acted with the intent to deprive another party of the information's use in the litigation.'" *Id*. (quoting 3 Fed. R. Civ. P. 37(e)(2)). "Negligence—even gross negligence—in failing to retain relevant evidence is not sufficient to support an adverse inference under Rule 37(e)(2)." *Id*. (quoting *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F.Supp.3d 1218, 1238 (N.D. Cal. June 6, 2022)).

Here, there is no dispute that the January search video footage qualified as electronically stored information (ESI) and, although not destroyed, it is corrupted and apparently cannot be restored or replaced. However, Plaintiff presents no evidence supporting the conclusion that the corruption was intended to deprive him of information useful in the instant litigation. Indeed, there is no evidence that the video would have depicted anything other than what is confirmed in the inventories of what was taken on January 20, 2025 and returned to Plaintiff on January 21, 2025. ECF No. 159-5 at 2. Further, Plaintiff's exhibits attached to his original Motion and Supplement show that Plaintiff is in possession of numerous documents relating to his spoliation allegations and historical grievances. ECF Nos. 161 at 12-44; 164 at 8-19; 171 at 8-12.

Based on the arguments and evidence presented, the questions that must be answered in order to determine if sanctions are appropriate include whether: (1) the at-issue video footage is relevant to the present litigation; (2) the inability to produce the video is the result of a failure to take reasonable steps to preserve it; and (3) prejudice attach as the result of the unavailability of the video. "Prejudice exists when spoliation prohibits a party from presenting evidence that is relevant to its underlying case." *Fast v. Godaddy.com LLC*, 340 F.R.D. 326, 339 (D. Ariz. 2022) *quoting Paisley Park Enters., Inc. v. Boxill*, 330 F.R.D. 226, 236 (D. Minn. 2019). "To show prejudice resulting from the spoliation," courts have held that "a party must only come forward with plausible, concrete suggestions as to what [the destroyed] evidence might have been." *Id. quoting TLS Mgmt. & Mktg. Servs. LLC v. Rodriguez-Toledo*, 2017 WL 1155743, at *1 (D.P.R.

5

2017) (internal quotations omitted). To consider these questions, the Court notes Plaintiff's claims in this case include an alleged deliberate indifference to Plaintiff's medical needs under the Eighth Amendment and a First Amendment retaliation claim asserted against an NDOC nurse arising from conduct after Plaintiff filed grievances related to unmet medical needs. ECF No. 7 at 13.

The Court starts with the fact that there is no evidence Defendants failed to take reasonable steps to preserve the January search video. Given that the existence of the video is not in dispute, a failure to take reasonable steps to preserve the video would have to arise from the fact that the video is corrupted. However, Plaintiff provides nothing that demonstrates any Defendant failed to take reasonable steps to prevent the corruption of the video. There is simply no evidence of a calculated effort by any Defendant to prevent the video from being produced.

Plaintiff also does not demonstrate how the video is relevant to his First or Eighth Amendment claims. "A litigant is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or the subject of a pending discovery request." *Wm. T. Thompson Co. v. General Nutrition Corp.*, 593 F. Supp. 1443, 1455 (C.D. Cal. 1984). Plaintiff offers nothing that suggests the video would show Suwe (or anyone involved in the January search) took documents other than a legal work box that was returned. Specifically, the Court cannot ignore evidence supporting the inference that the legal work taken on the day of the search (January 20, 2025) was returned after the search (January 21, 2025) as Plaintiff signed a form indicating "Property Received by" him included the legal work box (ECF No. 159-5 at 2). Evidence also shows Plaintiff submitted "appeals" the next day (January 22, 2025) that do not mention missing papers of any kind (*id*. at 5-6). And, the first grievance Plaintiff filed on February 7, 2025, did not mention missing paperwork, but sought the return of shoes (*id*. at 10).

Plaintiff does not demonstrate that any document he is allegedly missing prevents him from effectively presenting his First or Eighth Amendment claims. The Court notes Plaintiff's original Motion discusses events having nothing to do with his medical care or alleged retaliation for grievances related to medical care, which form the basis of the claims before the Court. Thus,

6

even assuming there was some confiscation of stamps and opening of legal mail, and further considering Plaintiff's contention that discipline he received arising from discovery of his possession of contraband—a cell phone—was improper and that there has been unsatisfactory responses to certain grievances filed (*see* the original Motion, ECF No. 161 at 4-7), these facts are unrelated to Plaintiff's instant claims. With respect to the grievance regarding Plaintiff's missing paperwork (ECF No. 171 at 8), which Defendants returned to him with an opportunity to resubmit (ECF No. 171 at 12), Plaintiff offers nothing to indicate he ever did so. ECF Nos. 161, 164, 171, 176.

Finally, Plaintiff does not make clear whether the "legal work" allegedly taken relates to the instant claims before the Court. Plaintiff presents no evidence that the loss of any of the ill-defined documents caused or will cause him prejudice.[5]

In sum, the Court finds Plaintiff has not met his burden of establishing there was a failure to take steps to prevent the corruption of the January search video, the video would contain any information relevant to his claims pending before this Court, or that he has been prejudiced as a result of Defendants' inability to produce the uncorrupted video.

### III.  Order

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Sanctions and Adverse Inference Under Rule 37(e) (ECF No. 161) and Supplemental Motion for Sanctions (ECF No. 171) are DENIED.

IT IS FURTHER ORDERED that Defendants' Motion to Strike (ECF No. 174) is DENIED.

DATED this 9th day of July, 2025.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

---

[5] The Court finds Plaintiff's Supplement describes the documents allegedly lost as including "vital legal documents – supporting multip[le] active civil cases." ECF No. 171 at 2. Plaintiff's grievance also states the documents related to "multiple civil lawsuits" Plaintiff has filed against the Nevada Department of Corrections. *Id*. at 8. These statement strongly suggests the documents Plaintiff contends were taken are not limited to documents related to the case at bar, which further detracts from a finding of relevance and, therefore, spoliation.