1

2                    UNITED STATES DISTRICT COURT
                          DISTRICT OF NEVADA
3

4   Keiton Smith,                          Case No. 2:22-cv-00872-CDS-EJY

5                    Plaintiff            **Order Granting the Defendants'
                                          Motion for Summary Judgment**
6   v.

7   Lorenzo Villegas, et al.,                      [ECF No. 165]

8                    Defendants

9

10          Incarcerated pro se plaintiff Keiton Smith brings this civil rights action under 42 U.S.C.

11   § 1983, alleging violations of the First, Eighth, and Fourteenth Amendments. *See* First am. compl.,

12   ECF No. 8. Defendants Kerry McCullah, Martin Naughton, and Lorenzo Villegas filed a motion

13   for summary judgment. Mot. summ. j., ECF No. 165. Smith filed an opposition. *See* Opp'n, ECF

14   No. 172. This motion is now fully briefed. *See* Reply, ECF No. 182. Because Smith did not

15   properly exhaust the available grievance procedures of the Nevada Department of Corrections

16   (NDOC), I grant the defendants' summary judgment.

17   **I.      Background**[1]

18          **A.  Smith's allegations**

19          Smith was arrested in November 2007 and held at various facilities, including Clark

20   County Detention Center, the High Desert State Prison (HDSP), and Ely State Prison. ECF No. 8

21   at 7–8, ¶ 8. In 2017, Smith was sent to Warm Springs Correctional Center (WSCC), where he

22   notified medical staff about his back pain. *Id.* at 8. In 2018, he got an x-ray, and it was determined

23   that Smith had a slight deterioration between two vertebrae. *Id.* Around this time, Doe Doctor A

24   told Smith he needed an MRI to determine the problem and gave him a UC Davis pamphlet of

25   stretching exercises to do and medication to take. *Id.*

26
    ─────────────────────
    [1] Unless otherwise noted, citations to the first amended complaint (ECF No. 8) are to provide context to
    this action, not to indicate a finding of fact.

1    From 2019 to 2021, Smith was examined by several doctors, but none scheduled an MRI.

2  *Id.* Smith filed several kites in 2019 and 2021 because of his constant back pains and because he

3  was given the wrong medication. *Id.* at 9. Throughout the years, Smith continued to see various

4  doctors who inquired if he utilized the pamphlet for stretching exercises, if his medication was

5  working, and when he would be released. *Id.* In early 2021, he saw a doctor virtually, and the

6  doctor stated that his "hip [did] look off." *Id.* at 10. As alleged, around this time, his back pain

7  had significantly worsened, and he was in medical at least four times a week. *Id.* On January 24,

8  2022, Smith was in so much pain that prison staff was called. *Id.* at 11. While unclear from the

9  complaint, he saw Dr. Haulke, who ordered him an MRI. *Id.* Around February 18, 2022, Dr.

10  Benson told Smith he had three vertebrae collapsed and needed surgery to correct the issue. *Id.*

11    **B.  Medical and grievance history**

12    In April 2018, Smith had an x-ray of his lumbar spine. *See* Medical file, Defs.' Ex. D, 167-1

13  at 50. Smith was then prescribed two types of pain relief medications and a Transcutaneous

14  Electrical Nerve Stimulation (TENS) treatment. *Id.* His referral for the TENS treatment was

15  approved in August 2018. *Id.* There is no indication he ever received the treatment. In January

16  2019, Smith underwent another x-ray, after which he was prescribed Baclofen, a medication

17  used to treat muscle stiffness and spasms. *Id.* at 111.

18    In October 2019, defendant Villegas referred Smith for an orthopedic consultation. Defs.'

19  Ex. D, ECF No. 167-1 at 33, 101. Shortly thereafter, in November 2019, Smith was transferred from

20  the WSCC to HDSP due to upcoming court proceedings. *See* Updated bed history, Defs.' Ex. A,

21  165-1 at 2; Case notes, Defs.' Ex. B, ECF No. 165-2 at 3. Smith was then transferred back to

22  WSCC in March of 2020. Defs.' Ex. A, 165-1 at 2. Upon his return, Smith was again referred for

23  an orthopedic consultation, which was later deferred pending the result of an injection

24  treatment and additional testing. Defs.' Ex. D, ECF No. 167-1 at 36. In July 2020, a consultation

25

26

was thereafter scheduled, but Smith refused to attend because of COVID concerns.[2] *Id.* at 36, 82, 187.

On April 15, 2021, Smith submitted an emergency grievance[3] (2006-31-20069), complaining of back pain and noting that he was not being provided medication. ECF No. 165 at 5; Defs.' Ex. H, ECF No. 165-8 at 8; Decl. Robert Hartman, Defs.' Ex. J, ECF No. 165-10; Emerg. grievance, Pl.'s Ex. B, ECF No. 8 at 31–33. On April 15, 2021, the grievance was denied because it did not meet the requirements for an emergency grievance. *See* Defs.' Ex. H, ECF No. 165-8 at 8. Smith was informed that they were waiting for approval of new medication and that his x-ray had been rescheduled. *Id.* Smith did not appeal this informal grievance to either the first or second level, nor did he resubmit an informal grievance. *Id.*

In December 2021, Smith underwent an MRI. Defs.' Ex. D, ECF No. 167-1 at 40, 286. The results of that MRI revealed Smith suffered from ""[l]oss of normal lumbar lordosis with spinal straightening associated with subtle" "degenerative retrolisthesis at L4-5 and L5-S1." *Id.* at 286. Further, Smith had "[b]road-based disc protrusion" to the left at L4-5 abutting the right L5, and "[b]road-based disc protrusion at L5-S1" but "no significant stenosis." *Id.* at 287. In February 2022, Smith was again referred to an orthopedic for consultation. *Id.* at 31. On May 18, 2022, Smith was seen by an orthopedic specialist. Defs.' Ex. D, ECF No. 167-1 at 29–30, 304; Movement history, Defs.' Ex. F, ECF No. 165-6 at 4; Ex. J, ECF No. 165-10 at 3, ¶ 9. In May 2022, Smith was referred to a neurosurgeon. Defs.' Ex. D, ECF No. 167-1 at 29, 292, 302–03, 310.

On March 1, 2022, Smith filed an informal grievance (2006-31-34695) about his back pain and WSCC's inadequate medical care. Defs.' Ex. H, ECF No. 165-8 at 8; Grievance Rejection, Pl.'s Ex. D, ECF No. 8 at 36–44. Smith's grievance stated that NDOC has been on notice of his medical condition since 2013, his condition has grown worse, and in 2018, NDOC medical staff

---

[2] Smith signed a release of liability form for declining his x-ray. *See* Defs.' Ex. D, ECF No. 167-1 at 186–87.
[3] In total, Smith filed four grievances related to these allegations: 2006-31-20069, 2006-31-34695, 2006-31-36936, 2006-31-40087. *See* Updated grievance history, Defs.' Ex. H; ECF No. 165-8.

determined his vertebra was deteriorating. Defs.' Ex. H, ECF No. 165-8 at 8; Pl.'s Ex. D, ECF No. 8 at 36–44. On March 2, 2022, former defendant Ashcraft[4] rejected the grievance because it was untimely and an abuse of the inmate grievance procedure. Pl.'s Ex. D, ECF No. 8 at 36–44. Specifically, Ashcraft indicated that Smith's grievances were "over issues older than 6 months" and therefore would "not be accepted." *Id.*

On March 11, 2022, following instructions from a case worker, Smith resubmitted his informal grievance (2006-31-34695). *See* ECF No. 8 at 11; Second grievance rejection, Pl.'s Ex. E, ECF No. 8 at 45–53; Defs.' Ex. H, ECF No. 165-8 at 8. The informal grievance again asserted that NDOC had notice of his condition, and his condition had become worse. *Id.* On March 15, 2022, Smith's informal grievance was rejected a second time on grounds that it was an abuse of inmate grievance procedure since the grievance was already abandoned due to untimely submission. *See* Pl.'s Ex. E, ECF No. 8 at 45–53; Defs.' Ex. H, ECF No. 165-8 at 8.[5]

On March 26, 2022, in complying with the next step in the administrative process, Smith attempted to file a "first level grievance" (2006-31-34695) that was rejected by Acting Warden, Nethanjah Childers, as untimely and an abuse of the grievance procedure. ECF No. 8 at 12; Third & final rejection, Pl.'s Ex. F, ECF No. 8 at 55–57. On March 31, 2022, Childers issued a "3rd and Final Rejection" indicating that it was an improper submission, untimely, and an abuse of inmate grievance procedure. *Id.* at 55. Specifically, Childers indicated that the grievance arises out of the six-month time frame established by Administrative Regulation (AR) 740.08. *Id.* The NDOC grievance history indicates the official's response as "wrong level on a grievance that was already abandoned due to initial untimely submission." Defs.' Ex. H, ECF No. 165-8 at 8.

---

[4] This defendant was dismissed at the screening stage. ECF No. 7 at 18.

[5] The defendants assert that Smith did not appeal this grievance to the first or second level nor did he resubmit an informal grievance. ECF No. 165 at 5. However, the evidence submitted by the defendants shows that Smith did resubmit his informal grievance. Defs.' Ex. H, ECF No. 165-8 at 8. Moreover, Smith's supporting documents attached to his complaint show that he attempted to file a "first level grievance," however, NDOC determined it was the "wrong level on a grievance." *See* Defs.' Ex. H, ECF No. 165-8 at 8.

On April 27, 2022, Smith was informed that he was being transferred to Southern Desert Correctional Center (SDCC). ECF No. 8 at 14.[6] He filed an emergency grievance (2006-31-36936) stating he was waiting to see his pre-op doctor and that he should not be moved. *Id.*; Emerg. grievance, Pl.'s Ex. L, ECF No. 8. On April 27, 2022, this emergency grievance was not accepted because it was not deemed an emergency grievance, and Smith was directed to file through normal channels. *See* Defs.' Ex. H, ECF No. 165-8 at 7.

On May 24, 2022, Smith filed an informal grievance (2006-31-40087) grieving that he was transferred while being in the process of seeing a doctor for his back consultation and pain. *See* ECF No. 165 at 5; Defs.' Ex. H, ECF No. 165-8 at 7. He argued that WSCC did not put a medical hold for him, and he was in further pain as a result. Defs.' Ex. H, ECF No. 165-8 at 7. On September 15, 2022, his grievance was rejected because he needed to include evidence of his informal attempt to resolve this issue, but he was advised that he had the opportunity to re-submit at the same level. ECF No. 165 at 5; Defs.' Ex. H, ECF No. 165-8 at 7. Smith did not appeal the denial of his informal grievance. *Id.*

On September 9, 2022, Smith was seen by Dr. Kaplan for back and leg pain. Defs.' Ex. D, ECF No. 167-1 at 305–06. A follow-up appointment was scheduled to discuss a possible L4-L5 and L5-S1 decompression fusion surgery. *See id.* at 306. After Smith was referred and approved for this follow-up appointment, Dr. Kaplan noted that Smith needed at least six weeks of nonsurgical treatment. *Id.* at 336; Defs.' Ex. F, ECF No. 165-6 at 4. Several days later Smith was again referred and approved for a follow-up appointment to review the results of an MRI taken in February 2023. Defs.' Ex. D, ECF No. 167-1 at 356–57; Defs.' Ex. F, ECF No. 165-6 at 4. Approximately six months later, Smith had lumbar fusion surgery on August 21, 2023. *See* Aug. 2023 surg., Defs.' Ex. G, ECF No. 167-3 at 2; Decl. of Ashley Porter, Defs.' Ex. K, ECF No. 165-11 at 3, ¶9.

---

[6] The record does not show any evidence of a grievance being filed regarding retaliation as it relates to Smith's transfer. *See* Defs.' Ex. H, ECF No. 165-8 at 7–9.

1        **C. Smith's initiated action**

2        Smith initiated this action on June 1, 2022. *See* ECF No. 1. In Smith's amended complaint,

3 he sued multiple defendants for events that took place while he was incarcerated at WSCC. *See*

4 ECF No. 8. After screening Smith's first amended complaint, the court allowed two claims to

5 proceed: the First Amendment retaliation claim against defendant Kerry McCullah, and the

6 Eighth Amendment claim for deliberate medical indifference against defendants Naughton,

7 Lorenzo, Mcbec, Cheryl, Kerry, and Doe Doctors A, B, C, and D, and Doe Nurse C. ECF No. 7 at

8 17. The defendants then filed this pending summary judgment motion.

9 **II.        Legal standard**

10       **A. Summary judgment**

11       Summary judgment is appropriate when the evidence, viewed in the light most favorable

12 to the nonmovant, indicates "no genuine dispute as to any material fact" and that "the movant is

13 entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect

14 the outcome of the suit" based on the governing law, and a dispute is genuine "if the evidence is

15 such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

16 *Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "mere disagreement or the bald assertion that a genuine

17 issue of material fact exists" is not enough to defeat summary judgment. *Harper v. Wallingford*, 877

18 F.2d 728, 731 (9th Cir. 1989).

19       Because the plaintiffs bear the burden of proof at trial, a moving defendant need only

20 point to an absence of evidence on an element of the plaintiffs' case. *Musick v. Burke*, 913 F.2d 1390,

21 1394 (9th Cir. 1990). Once the moving party satisfies Rule 56 by demonstrating the absence of

22 any genuine issue of material fact, the burden shifts to the party resisting summary judgment to

23 "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250–

24 51. "To defeat summary judgment, the nonmoving party must produce evidence of a genuine

25 dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d

26 989, 992 (9th Cir. 2018); *Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). The

1   nonmoving party "may not rely on denials in the pleadings but must produce specific evidence,

2   through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME*

3   *Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

4              **B.   Administrative exhaustion**

5              The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust all available

6   administrative remedies before filing a civil-rights action to redress alleged constitutional

7   violations by prison staff. 42 U.S.C. § 1997e(a). The Supreme Court has interpreted the PLRA as

8   "requir[ing] proper exhaustion," which "demands compliance with an agency's deadlines and

9   other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 91 (2006). Of course, "[a]n inmate

10  need exhaust only such administrative remedies as are 'available,'" which requires that the

11  procedures "are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*,

12  578 U.S. 632, 642 (2016). In *Ross v. Blake*, the United States Supreme Court provided a non-

13  exhaustive list of "circumstances in which an administrative remedy, although officially on the

14  books, is not capable of use to obtain relief." *Id.* at 643. An administrative remedy may be

15  considered unavailable when "it operates as a simple dead end—with officers unable or

16  consistently unwilling to provide any relief to aggrieved inmates"; when the

17  administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; or

18  when "prison administrators thwart inmates from taking advantage of the grievance process

19  through machination, misrepresentation, or intimidation." *Id.* at 643–44.

20             To succeed on a PLRA-exhaustion defense at summary judgment, the defendant must

21  "prove that there was an available administrative remedy" that the prisoner did not exhaust; the

22  burden then shifts to the plaintiff to provide evidence that the remedy was unavailable to him.

23  *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204 (2007)

24  (cleaned up). But "the ultimate burden of proof remains with the defendant." *Id.* The trial court

25  should grant summary judgment based on a lack of exhaustion only "[i]f undisputed evidence

26  viewed in the light most favorable to the prisoner shows a failure to exhaust." *Id.*

III.    Discussion

The defendants argue that summary judgment should be granted for the following reasons: (1) both of Smith's claims are barred by the PLRA; (2) Smith's medical deliberate indifference claim is time-barred; (3) the defendants are entitled to qualified immunity as to both claims[7]; and (4) Smith is not entitled to punitive damages. *See* ECF No. 165. I agree in part.[8] Whether Smith exhausted his administrative remedies is a threshold issue. *See United States v. Morfin-Rios*, 2023 U.S. Dist. LEXIS 116878, at *3 (S.D. Cal. July 5, 2023). So I address it first.

### A. The PLRA requires complete exhaustion of available administrative remedies and Smith failed to exhaust his administrative remedies.

To exhaust administrative remedies within the NDOC, inmates must follow the procedures outlined in AR 740,[9] and they must complete three levels of grievance: informal, first, and second. *See* AR 740.08–740.10.[10] Generally, inmates must first file an informal grievance within six months of the action giving rise to a medical claim. AR 740.08(4)(A); *Jackson v. Russell*, 2025 U.S. Dist. LEXIS 5058, at *5 (D. Nev. Jan. 8, 2025); AR, Defs.' Ex. I, ECF No. 165-9 at 11. The prison has 45 days to respond to that informal grievance. AR 740.08(12). If the prison denies the informal grievance, the inmate has five days after the receipt of the denial to proceed to the next grievance level. AR 740.08(12)(A). The inmate can then file a first-level grievance, which the prison has 45 days to respond to. AR 740.09(5). If the inmate receives another denial, he has five days to file an appeal to proceed to his second-level grievance. AR 740.09(5)(A). In short, after each denial, the inmate must file an appeal to proceed to his next-level grievance within five days to exhaust the facility's administrative procedures. *Jackson*, 2025 U.S. Dist. LEXIS 5058, at

---

[7] Because I grant the motion based on Smith's failure to exhaust, I do not address the merits of the time-barred arguments nor whether the defendants were entitled to qualified immunity.

[8] Because I find that Smith's claims are barred by the PLRA and no substantive claims remains, there is no basis for an award of punitive damages. So I need not and do not address the additional arguments regarding punitive damages.

[9] As an NDOC AR is publicly available, I may take judicial notice of it. *See Brown v. Valoff*, 422 F.3d 926, 931 n.7, n.9 (9th Cir. 2005) (taking judicial notice of prison's Department Operations manual and California Department of Correction Administrative Bulletin); *see also* Fed. R. Evid. 201(b)(2).

[10] *See also* Admin. Reguls., Defs.' Ex. I, ECF No. 165-9.

1   *5. Here, the defendants argue that both the retaliation and medical deliberate indifference

2   claims are barred by the PLRA. ECF No. 165 at 9. I agree.

3          The defendants argue that Smith's grievance history record establishes that he failed to

4   complete the grievance process for any of the grievances regarding his back issue and did not file

5   a grievance regarding defendant McCullah's alleged retaliatory misconduct. ECF No. 165 at 11.

6   They assert that because Smith did not complete the grievance process relating to any of his

7   claims, summary judgment is appropriate. *Id.* In opposition, Smith argues that the record shows

8   over a decade of chronic spinal pain and failed treatment which led to a 2023 surgery, followed

9   by no rehabilitative therapy. *See* ECF No. 172 at 2.[11] Moreover, Smith argues that the defendants'

10  summary judgment motion selectively omits these critical facts and fails to rebut his claims of

11  "systemic neglect, delay, and harm." *Id.*

12              1.   *The administrative remedies were not exhausted as to the retaliation*
                     *claim (2006-31-36936, 2006-31-40087).*
13

14         The defendants argue that Smith did not file a grievance regarding defendant McCullah's

15  alleged retaliatory misconduct. *See* ECF No. 165 at 11; Defs.' Ex. H, ECF No. 165-8. I agree. The

16  record is devoid of any indication that Smith filed any grievance for his retaliation claim. *Id.*

17         Although there were two grievances Smith filed related to his transfer (2006-31-36936

18  and 2006-31-40087), none of these grievances mentioned retaliation. *See id.* Smith asserts in his

19  complaint, that McCullah should have seen his (medical indifference) grievance to prevent his

20  transfer, called him in for his kites, given him medication before his transfer, took him off the

21  _____

    [11] The court liberally construes the filings and motions of pro se inmates in a civil suit. *See Thomas v. Ponder*,
22  611 F.3d 1144, 1150 (9th Cir. 2010) (explaining that courts should construe liberally motion papers and
    pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly). However,
23  Smith raises several arguments, asserting that despite an NDOC provider ordering plaintiff to return to
    physical therapy following a 2023 back surgery, he has not received any care. So I do not address new
24  medical indifference claims raised that may have occurred in 2025 for two reasons. While these
    arguments might form the basis of new claims against NDOC, they are not relevant to resolution of this
25  summary judgment motion because they do not create a genuine issue of material fact, so they are not
    considered or addressed herein. *See Saddozai v. Davis*, 35 F.4th 705, 708 (9th Cir. 2022) (noting
26  "[e]xhaustion requirements apply based on when a plaintiff files the operative complaint" (citation
    omitted)).

transfer to continue his medical treatment, but instead she retaliated against him. *See* ECF No. 8 at 17. Retaliation is a grievable issue. *See* AR 740-03(9)(A). But Smith's complaint, opposition, and exhibits do not reference any grievance filed related to his retaliation claim. So Smith did not exhaust administrative remedies as to this claim. Because I find that there is no genuine issue of material fact, I grant summary judgment on the retaliation claim.

### 2. The administrative remedies were not exhausted as to the medical indifference claim (2006-31-20069, 2006-31-34695).

The defendants argue that Smith's grievance history record establishes that he failed to complete the grievance process for any of the grievances regarding his back issue. ECF No. 165; Defs.' Ex. H, ECF No. 165-8. I agree. In reviewing the NDOC record, Smith did file grievances for his medical indifference claim, but did not complete this process. According to the exhibits submitted by Smith, it shows after filing informal grievances, he attempted to file a "first level grievance" for 2006-31-34695. *See* Pl.'s Ex. F, ECF No. 8 at 56. However, according to the NDOC record, this third grievance attempt constituted the "wrong level on a grievance." *See* Defs.' Ex. H, ECF No. 165-8 at 8. Even assuming that Smith properly filed a first level grievance, the record does not indicate that Smith filed a second level grievance, *id.*, which is required. *See* AR 740.03 (6) (explaining grievance denial appeal process). Similarly, after Smith's 2006-31-20069 grievance was denied, he did not attempt to file an appeal or another informal grievance. *See* Defs.' Ex. H, ECF No. 165-8 at 8. Unfortunately, the record shows Smith did not complete the required process for either grievance.

While the court may waive the PLRA mandatory exhaustion requirement when there is a "genuine dispute that the grievance procedure was effectively unavailable," Smith has not shown such unavailability. *See Rodriguez v. Cain*, 2022 U.S. Dist. LEXIS 89323, at *16 (D. Or. May 17, 2022) (citation omitted). Moreover, I do not determine this to be a situation where the opportunity to file a grievance operates as a "simple dead end." *Ross*, 578 U.S. at 643–44. The informal grievances were reviewed, rejected, and denied on the basis that the grievances fell

outside of the six-month window. *See* Defs.' Ex. H, ECF No. 165-8 at 8. Further, Smith has not shown that he was prevented from filing a grievance prior to 2021 or 2022. *See Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010) (explaining to support a finding of unavailability, an inmate must establish that he attempted to exhaust his administrative remedies but was thwarted by improper screening.). Specifically, a prisoner must show that "(1) he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." *Id.* at 823–24. The record here shows the administrative process was available and functioning properly, and was "[capable] of use." *Ross*, 578 U.S. at 643–44. While the court remains concerned about Smith's medical treatment, even in the light most favorable to Smith, he failed to demonstrate that he properly exhausted his administrative remedies as to grievances 2006-31-34695 and 2006-31-20069. Consequently, the defendants are entitled to summary judgment on both of Smith's claims based on the failure to exhaust PLRA administrative remedies.

IV.    **Conclusion**

IT IS HEREBY ORDERED that the defendants' motion for summary judgment **[ECF No. 165] is GRANTED.**

The Clerk of Court is kindly directed to enter judgment in favor of the defendants.

Dated: December 30, 2025

_____
Cristina D. Silva
United States District Judge